NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NEW JERSEY MANUFACTURERS
INUSRANCE GROUP A/S/O KECIA ELLIS
AND KATHLEEN BRAND,

            Plaintiff,

v.

ELECTROLUX HOME PRODUCTS, INC.,

            Defendant.

Civ. No. 10-1597

OPINION

THOMPSON, U.S.D.J

### I.  INTRODUCTION

This matter has come before the Court on Plaintiff's Motion for New Trial, (Docket Entry No. 162), which Defendant has opposed, (Docket Entry No. 178). This case involves a fire at the home of Kecia Ellis ("Ellis") that spread to and damaged the property of Kathleen Brand ("Brand") on December 13, 2008. After the fire, Plaintiff paid an insurance claim to Ellis and Brand. Plaintiff, as subrogee, then initiated this lawsuit against Defendant on March, 26, 2010. (Docket Entry No. 1). On April 22, 2013, the case went to trial. (Docket Entry No. 165). At trial, Plaintiff argued that Defendant was liable because the dryer was defective (1) in design; and (2) in failing to contain adequate warnings. (*See* Docket Entry No. 154). On April 29, 2013, the jury returned a verdict for Defendant. On the verdict sheet, the jury indicated that Plaintiff had not shown that the dryer was defective either in design or for failure to provide adequate warnings. (*Id.*). The jury, therefore, did not reach the remaining questions on the verdict sheet

1

that dealt with the other elements Plaintiff was required to prove, such as misuse and proximate cause.  (*See id*.).

Plaintiff now moves for a new trial.  (Docket Entry No. 162).  The Court has decided the matter upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b).  For the following reasons, Plaintiff's Motion for New Trial is denied.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 59 permits parties to move for a new trial.  FED. R. CIV. P. 59.  Under the Rule, "[a] new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ."  *Id*.

A party may move for a new trial on grounds of either insufficiency of evidence or trial error.  A motion for new trial on grounds of insufficiency of evidence "should be granted when, in the opinion of the trial court, the verdict is contrary to the great weight of the evidence, thus making a new trial necessary to prevent a miscarriage of justice."  *Roebuck v. Drexel Univ.*, 852 F.2d 715, 736 (3d Cir. 1988).  The party challenging the verdict for insufficiency of evidence "bears a heavy burden of showing that the verdict is against the weight of the evidence and that a miscarriage of justice would result if the verdict were to stand."  *Helena Chem. Co. v. Nelson*, No. 97-5662, 2000 WL 1880331, at *2 (D.N.J. Dec. 29, 2000) (citing *Klein v. Hollings*, 992 F.2d 1285, 1290 (3d Cir. 1993)).  Furthermore, in reviewing such a motion, the Court must view all the evidence and inferences reasonably drawn from the evidence in the light most favorable to the party with the verdict.  *Marino v. Ballestas*, 749 F.2d 163, 167 (3d Cir. 1984).

When reviewing a motion on grounds of trial error, however, "the court must disregard all errors and defects that do not affect any party's substantial rights." FED. R. CIV. P. 61. Therefore, "[t]he court's inquiry in evaluating a motion for a new trial on the basis of trial error is twofold." *Farra v. Stanley-Bostitch, Inc.*, 838 F. Supp. 1021, 1026 (E.D. Pa. Dec. 6, 1993), *aff'd without op.*, 31 F.3d 1171 (3d Cir. 1994). "It must first determine whether an error was made in the course of the trial, and then must determine 'whether that error was so prejudicial that refusal to grant a new trial would be 'inconsistent with substantial justice.'" *Id.* (internal citations omitted).

### III.  ANALYSIS

Plaintiff has advanced a number of arguments in favor of a new trial. The Court now addresses each argument separately.

*A. Denial of Plaintiff's Motion to Amend the Pretrial Order*

First, Plaintiff contends that the Court erred in denying Plaintiff's Motion to Amend the Final Pretrial Order. (Docket Entry No. 162, Attach. 1 at 17-22). The Final Pretrial Order was filed on November 16, 2012, and stated that "[a]mendments to this Final Pretrial Order will not be permitted unless the Court determines that manifest injustice would result if the amendment is disallowed." (Docket Entry No. 61). Approximately two weeks before trial, Plaintiff sought to amend the Final Pretrial Order to add Brian Ripley ("Ripley"), an engineer employed by Defendant in Iowa, as a witness.[1] (Docket Entry No. 120). The basis for Plaintiff's application was that Defendant had failed to produce certain items during discovery that Plaintiff claimed

---

[1] Although Plaintiff first brought this issue to the Court's attention in a letter on December 21, 2012, (Docket Entry No. 85), the Court, at the request of the parties, agreed to wait for Judge Falk to issue a ruling on a similar discovery dispute in *Pawloski v. Electrolux, Inc.* and then defer to that decision. (Docket Entry No. 87). Plaintiff waited until approximately two weeks before trial to advise the Court that no decision had been made in the *Pawloski* matter. (Docket Entry No. 120).

3

were responsive to its discovery demands. (Docket Entry Nos. 120, 133, 139, 141). Plaintiff advised the Court that in another related case, *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, the court had ruled that Defendant improperly withheld discoverable items, a ruling that had prompted a similar, still unresolved discovery dispute in another case, *Pawloski v. Electrolux, Inc*. (Docket Entry No. 120). Plaintiff explained that "Ripley's deposition transcript and testing results are one of the eight items sought in the *Charter Oaks/Pawloski* dispute." (*Id.*). To remedy this alleged failure to comply with discovery, Plaintiff requested that the Final Pretrial Order be amended to permit Plaintiff to read to the jury a deposition Ripley had given in a California state court case. (*Id.*). Plaintiff also explained that no additional discovery would be needed.[2] (*Id.*).

     Defendant objected to Plaintiff's motion to amend the Final Pretrial Order. (Docket Entry Nos. 129, 138). After conducting oral argument, the Court denied the motion on April 19, 2013, three days before trial, (Docket Entry No. 143), and issued an opinion explaining its ruling on April 23, 2013. (Docket Entry No. 145). In the opinion, the Court explained that Ripley's deposition and testing results were not specifically responsive to the discovery demands made by Plaintiff in this case, and the Court was not persuaded that Defendant had improperly withheld that material. (*Id.*). Therefore, the Court concluded that amendment was not warranted, emphasizing that Plaintiff had not met its heavy burden under the manifest injustice standard. (*Id.*).

     Upon reviewing Plaintiff's arguments concerning the Court's decision to deny amendment of the Final Pretrial Order, the Court cannot say that a new trial is warranted. (Docket Entry No. 145). Plaintiff simply has not shown that the Court erred in its Opinion dated

---

[2] While Plaintiff had obtained the Ripley deposition, apparently outside of the formal discovery process, Plaintiff had not obtained the other disputed discovery items at the time it moved to amend the Final Pretrial Order.

4

April 23, 2013.  For example, Plaintiff argues that the Court erred in concluding that Defendants did not withhold documents because the Court "never had an opportunity to analyze the withheld information, but for those documents which Plaintiff was able to obtain from other sources." (Docket Entry No. 162, Attach. 2 at 20).  Plaintiff apparently misreads the Court's decision, however.  The Court merely held that Plaintiff had not established that manifest injustice would result if Plaintiff were denied the opportunity to read a deposition from another case because the evidence Plaintiff sought to admit – evidence concerning particular lint tests – was not specifically responsive to the discovery requests made by Plaintiff.

      The Court emphasized that Plaintiff had not met its heavy burden of establishing manifest injustice.  For example, in concluding that the Ripley deposition was not responsive to Plaintiff's discovery requests, the Court explained that "it was not clear to the Court that all dryers that employ a ball-hitch design are necessarily of the same make or model as all other such dryers." (Docket Entry No. 145).  Plaintiff argues that this provides a basis for a new trial because "it was established at trial . . . that the ball-hitch models involved the same internal air components and design, plastic components, motor, heating pan, dryer load size, physical size, and location of manufacture." (Docket Entry No. 162, Attach. 1 at 19 (internal quotations omitted)).  Although the Court questions whether this was, in fact, established at trial, it is irrelevant to the issue now before the Court.  Plaintiff bore the burden of establishing manifest injustice prior to the Court's ruling on the motion.  As such, testimony subsequently elicited at trial does not determine whether Plaintiff demonstrated manifest injustice in arguing in favor of its motion to amend the Final Pretrial Order.

      Furthermore, even if the Court had erred in denying amendment, the Court cannot say that Plaintiff suffered prejudice as a result of the Court's ruling as Plaintiff was able to elicit

5

virtually the same testimony concerning lint testing at trial. (*See* Docket Entry No. 167 at 48:7-60:19, 74:3-24). Therefore, Plaintiff has not shown that the Court's ruling on amendment of the Final Pretrial Order warrants a new trial.

    B. *Testimony of Expert Witness Crabtree on Cause & Origin of Fire*

Plaintiff also argues that a new trial is warranted as a result of the Court's rulings regarding the testimony and cross-examination of Defendant's expert witness James Crabtree ("Crabtree"). (Docket Entry No. 162, Attach. 1 at 7-14). Plaintiff argues that the Court erred in permitting Defendant to present Crabtree as an expert in the cause and origin of the fire as well as in denying Plaintiff the opportunity to impeach Crabtree with his deposition testimony in which he stated that he had not rendered an opinion in his report as to the cause and origin of the fire. (*Id*. at 8-9).

First, upon reviewing Plaintiff's arguments, the Court cannot say that it erred in permitting Defendant to present Crabtree as an expert witness whose testimony would include cause and origin judgments. The Court considers Plaintiff's argument to be largely a matter of semantics. The Court did not deny Plaintiff the opportunity to impeach Crabtree as to his qualifications as a cause and origin expert as Plaintiff contends. In fact, the Court specifically instructed Plaintiff that he could use the deposition to impeach Crabtree, (Docket Entry No. 170 at 144:6-12); however, Plaintiff's counsel did not first properly lay the foundation to impeach the witness. Instead, Plaintiff's counsel, on a number of occasions, began to read Crabtree's deposition to him without first eliciting an inconsistent statement and then asking Crabtree if he remembered making the contrary statement at the deposition. As such, the Court did not deny Plaintiff the opportunity to impeach the witness but merely required Plaintiff to first lay the

foundation with an inconsistent statement and the context for the deposition before introducing the deposition testimony.

Furthermore, even if the Court had erred in permitting Defendant to present Crabtree as a cause and origin expert or in some way restricting Plaintiff's ability to impeach Crabtree, Plaintiff was not prejudiced. First, Crabtree's testimony concerning cause and origin was consistent with the opinions of Plaintiff's own expert, Patrick McGinley, and the Township of Lawrence Fire Marshal, who concluded that the fire originated in the base of the dryer. In other words, Plaintiff apparently contends that it suffered unfair surprise and was prejudiced by a representation consistent with the testimony it advanced.

Additionally, there was no prejudice to Plaintiff because the disputed testimony was relevant only to the issue of proximate cause, an issue not reached by the jury in their deliberations. *See Farra v. Stanley-Bostitch, Inc.*, 838 F. Supp. 1021, 1031 (E.D. Pa. Dec. 6, 1993) (holding that error in jury instructions regarding an affirmative defense was harmless where the jury did not reach the issue); *see also Markovitch v. Bell Helicopter Textron, Inc.*, 805 F. Supp. 1231, 1241 (E.D. Pa. Apr. 6, 1992) ("As a threshold matter, a party challenging a jury instruction on a particular matter must establish that the jury in fact reached that matter. A motion for a new trial on issues that a jury did not reach will not be granted."); *Field v. Omaha Standard, Inc.*, 582 F. Supp. 323, 332 (E.D. Pa. 1983) (denying plaintiff's motion for new trial based on alleged errors of the trial court dealing with proximate cause where the jury in response to written questions found the product was not defective and, therefore, did not reach the issue of proximate cause). As such, the Court finds no basis to grant a new trial simply because Defendant's counsel presented Crabtree as an expert witness whose testimony encompassed in some sense cause and origin.

7

*C. Juror Questions to Expert Witness Crabtree*

Plaintiff next contends that the Court erred in permitting a juror to ask questions directly to Crabtree. (Docket Entry No. 162, Attach. 1 at 15-16). Plaintiff contends that those questions not only permitted "the jury to unfairly bond directly with Defendant's expert," but also placed Plaintiff's counsel at a disadvantage as an objection would make it "appear that the plaintiff was shunning the jury." (*Id.*).

This Court permits jurors to pose questions to witnesses and employs a procedure to first screen those questions in conformity with the Third Circuit's opinion in *United States v. Hernandez*, 176 F.3d 719 (3d Cir. 1999). Specifically, this Court requires jurors to submit their questions in writing at the conclusion of a witness's testimony. The Court then reviews those questions with counsel, rules on objections at sidebar, and then poses the acceptable questions directly to the witness. Opportunities for follow-up cross-examination on testimony elicited by a juror's questions are provided to both sides.

The Court employed just this screening mechanism at the conclusion of the examination of Crabtree at trial. (Docket Entry No. 170 at 175:5-12). Jurors submitted written questions and the Court conducted a sidebar conference to consider whether the questions were proper. (*Id.*). The Court then proceeded to ask a question about whether lint had burned in a particular area of the dryer. (*Id.* at 175:13-23). As there had been some confusion concerning the question, the Court permitted counsel for both parties to ask follow-up questions. (*Id.* at 175:24-176:5). After this questioning by counsel, the juror who had submitted the question was apparently still not satisfied that her question had been answered and interjected to clarify that her question concerned the air flow pattern within the dryer. (*Id.* at 176:7-182:9). After the juror asked several clarifying questions, the Court interrupted the questioning, stating that it was the Court's

8

preference to permit jurors to only ask questions that are first presented in writing and screened by the Court. (*Id*. at 182:10-14).

Although it is not the policy of the Court to permit jurors to ask questions directly to a witness, the Court finds that this particular instance of juror questioning does not present grounds for a new trial. First, the Court followed the *Hernandez* procedure for screening the juror's question and the subsequent oral questions posed by the juror merely clarified a question already screened by the Court. Furthermore, Plaintiff apparently does not object to any of the questions posed by the juror, but argues instead that the colloquy may have facilitated a bond between the witness and the juror. Even if the colloquy did create an impermissible opportunity to sway the juror as Plaintiff contends, the juror who posed the questions to the witness was ultimately excused prior to deliberations due to a personal emergency and, therefore, did not deliberate with the jury at all. The Court does not agree, therefore, that Plaintiff suffered prejudice as a result of the questions posed by the juror.

   D. *Defendant's Use of Affidavit from Another Matter to Impeach Expert Witness Parsons*

Plaintiff also contends that a new trial is warranted because the Court permitted Defendant to use an affidavit from another case to impeach Plaintiff's expert witness Ronald Parsons ("Parsons"). (Docket Entry No. 162, Attach. 1 at 16-17). At trial, Defendant argued that the installation of the dryer using flex foil duct in violation of the dryer's installation instructions was a superseding, intervening cause of the fire. To challenge this argument, Plaintiff introduced testimony from Parsons that there were times when it was appropriate to use flex foil duct. Defendant used for impeachment an affidavit from another case when Parsons had discussed the hazards of using flex foil duct, including how flexible foil duct increased the likelihood of lint fires. The Court permitted Defendant to use this affidavit to impeach Parsons on this discrete

9

issue and then provided Plaintiff with an opportunity to rehabilitate the witness by allowing it to ask Parsons to explain the discrepancies in his testimony.

As a preliminary matter, the Court notes that Plaintiff did not object to the use of the affidavit at trial. (*See* Docket Entry No. 158 at 14:14-26:2). "If a party fails to object in a timely fashion, the objection is waived" and the admission of evidence is reviewed only for plain error. *Gov't of Virgin Islands v. Archibald*, 987 F.2d 180, 184 (3d Cir. 1992). As such, Plaintiff waived the right to challenge the use of the affidavit and the Court finds no basis for concluding that its use for impeachment purposes on this discrete issue constitutes plain error. Furthermore, Plaintiff was not prejudiced by its use as the testimony concerned the issue of proximate cause, which as previously discussed, was not reached by the jury during its deliberations.

### E. Ruling on Evidence Concerning Defendant's Sale of Flex Foil

Plaintiff also argues that the Court's rulings on the admissibility of evidence concerning Defendant's sale of flex foil duct warrants a new trial. (Docket Entry No. 162, Attach. 1 at 23-27). As previously discussed, Defendant argued at trial that the installation of the dryer using flex foil duct was a superseding, intervening cause of the fire. Plaintiff sought to introduce evidence that Defendant sells flex foil duct and, therefore, "should not be able to argue the inherent dangers of flexible foil . . . ." (*Id*. at 23). During the presentation of evidence, the Court sustained Defendant's objection to the admission of this evidence; however, during the charge conference, the Court reversed its ruling, having concluded that the sale of the flex foil duct was relevant to the issue of whether installing the dryer using flex foil duct constituted reasonably anticipated misuse of the dryer. (Docket Entry No. 173 at 7:14-8:5). Under the Court's direction, the parties stipulated that Defendant sold flexible foil duct in the past and this stipulation was read to the jury prior to closing arguments and was also submitted in writing for

10

the jury to review during deliberations. (Docket Entry No. 173 at 12:21-25, 13:1-15). Upon Defendant's objection, the Court denied Plaintiff's request to also admit a photograph of flex foil duct packaged by Defendant.

Plaintiff contends that it was prejudiced because "[t]he Court reversed its position on this crucial piece of rebuttal evidence when it was too late to matter." (Docket Entry No. 162, Attach. 1 at 27). The Court disagrees. First, while Plaintiff contends that the Court's ruling came "too late to matter," the Court in fact introduced the parties' stipulation prior to closing arguments. As such, the Court disagrees that the admission came too late to matter. This is further underscored by the fact that evidence of Defendant's sale of flex foil duct was admitted in the form of a written stipulation. Additionally, in light of the stipulation, the photograph of flex foil duct was cumulative evidence properly excludable under Federal Rule of Evidence 403. In sum, Plaintiff simply has not shown that he was prejudiced by the Court's rulings concerning Defendant's sale of flex foil duct.

    F. *Empty Chair & Contributory Negligence Defenses*

Plaintiff next argues that the Court erred in permitting Defendant to argue certain defenses. First, Plaintiff contends that Defendant should not have been allowed to argue comparative fault/negligence to the jury. (Docket Entry No. 162, Attach. 1 at 33-38). The Court, however, did not permit Defendant to advance this defense.[3] (Docket Entry No. 172 at 95:12-25). Plaintiff, however, appears to base its argument on the fact that Defendant was permitted to ask questions regarding Ellis's conduct in cleaning and maintaining the dryer and to

---

[3] The Court did not instruct the jury on comparative fault/negligence, nor did the verdict sheet include such questions.

11

argue that the proximate cause of the fire was not a defect in the dryer but was the maintenance conduct of Ellis.

The Court does not agree that Defendant was permitted to advance a comparative fault/negligence defense simply because Defendant argued facts regarding Ellis's conduct for proximate cause purposes. In fact, courts have repeatedly held that a plaintiff's actions may be relevant to the issue of proximate cause even where the jury may not consider the conduct as evidence of contributory negligence. *McGarrigle v. Mercury Marine*, 838 F. Supp. 2d 282, 294 (D.N.J. Dec. 20, 2011) (determining that evidence of plaintiff's speeding was relevant to the issue of proximate cause even though the jury could not consider it for comparative negligence purposes as there was no evidence that the plaintiff had proceeded in the face of a known danger); *Johansen v. Makita U.S.A., Inc.*, 128 N.J. 86, 98 (N.J. 1992) ("Although plaintiff's failure to support the board was relevant to the issue of proximate cause, the jury could not consider plaintiff's conduct as evidence of contributory negligence . . . .").

Next, Plaintiff challenges Defendant's defense that the installation of the dryer using flex foil duct by Lowe's Home Improvement ("Lowe's"), a non-party, was an intervening, superseding cause of the fire. (Docket Entry No. 162, Attach. 1 at 28-38). According to Plaintiff, the Court failed to require Defendant to attempt to plead Lowe's into the litigation or to meet the necessary proofs to advance this "empty chair defense." (*Id.*). Particularly, Plaintiff contends that the Court did not require Defendant to show that Lowe's was the *sole* cause of the fire because Defendant also argued, in the alternative, that the fire was the proximate cause of Ellis's maintenance of the dryer.

The Court, however, disagrees. It is well-established that parties may advance alternative theories at trial. *See Kuzian v. Electrolux Home Prods., Inc.*, No. 12-3341, 2013 WL 1314722, at

\*15 (D.N.J. Mar. 28, 2013).  Therefore, as Defendant put forward sufficient evidence from which a reasonable jury could conclude that the conduct of either Lowe's or Ellis was the sole proximate cause of the fire, the Court did not err in permitting Defendant to argue that the conduct of either Lowe's or Ellis was an intervening, superceding cause of the fire.  Furthermore, regardless of whether the Court erred in permitting Defendant to advance these arguments, Plaintiff was not prejudiced as the jury did not reach the issue of proximate cause.

    G. *Weight of the Evidence*

    Finally, Plaintiff contends that a new trial is warranted because the verdict is contrary to the great weight of the evidence.  (Docket Entry No. 162, Attach. 1 at 38-40).  The Court, however, finds ample evidence to support the jury's verdict.  Defendant demonstrated, among other things, that (1) the product was not defective, (Docket Entry No. 167 at 80:20-25, 81:1-12); (2) the manufacturer conducted tests that demonstrated that there was no risk of a lint fire if the product were properly installed, (*id*. at 85:3-25, 87:13-19); (3) and that the product was sold with warnings and instructions that, if followed, would make a lint fire highly unlikely.  Furthermore, Plaintiff's own cause and origin expert witness concluded that subrogation was not warranted in this case, (Docket Entry No. 168 at 40:8-14), and the Township of Lawrence Fire Marshal indicated in his report that no action needed to be taken with these types of ball hitch dryers, (Docket Entry No. 170 at 76:20-25).  Therefore, the jury, in returning a verdict for Defendant, appears to have rejected Plaintiff's theory of defect, and the Court simply cannot say that the jury's verdict is contrary to the great weight of the evidence.

IV.    CONCLUSION

Having reviewed Plaintiff's arguments, the Court concludes that a new trial is not warranted.  Plaintiff's Motion for New Trial is, therefore, denied.


/s/ Anne E. Thompson
ANNE E. THOMPSON, U.S.D.J.


Date:    August 20, 2013