UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

NEW JERSEY MANUFACTURERS         :
INSURANCE GROUP A/S/O KECIA
ELLIS and KATHLEEN BRAND,        :

        Plaintiff,                :        Civil Action No. 10-1597 (AET)

        v.                        :        **CLERK'S OPINION GRANTING**
                                           **IN PART AND DENYING IN PART**
ELECTROLUX, INC.,                :        **DEFENDANT'S MOTION**
                                           **TO TAX COSTS**

        Defendant.                :
_____

      This matter comes before the Clerk on the motion of Defendant Electrolux Home

Products, Inc. (improperly named as "Electrolux, Inc.") ("Defendant," "Electrolux") [Dkt.

Entry 184] to tax costs against Plaintiff New Jersey Manufacturers Insurance Group ("Plaintiff,"

"NJM") pursuant to Federal Rule of Civil Procedure 54(d) and Local Civil Rule 54.1.

Plaintiff opposes this motion [Dkt. Entry 185].

      In this diversity case, filed on March 26, 2010 [Dkt. Entry 1], Plaintiff alleged that

a fire which occurred in the home of its insured, Kecia Ellis, and spread to the neighboring

residence of its insured, Kathleen Brand, originated from a Frigidaire dryer manufactured by

Defendant.  The complaint states claims of strict products liability and breach of warranty.

      A six-day jury trial, held on April 22 - April 29, 2013, culminated in a verdict for

Defendant.  On May 7, 2013, this Court entered final judgment in Electrolux's favor and

ordered that costs be taxed against NJM [Dkt. Entry 159].  Plaintiff's motion for a new trial

[Dkt. Entry 162] was denied by the Court on August 20, 2013 [Dkt. Entry 183].

      Electrolux filed the within motion on September 6, 2013, requesting total costs of

$91,665.25, consisting of the fees of:  service of subpoena ($59.95); hearing ($3,777.70) and

deposition transcripts ($3,461.85); witnesses ($237.00 + $1,379.52); experts (Affiliated Engineering - $54,644.00, the Wright Group - $6,015.28, Patrick McGinley - $453.75 and ESI - $1,539.37); copies ($11,157.89); the docket fee ($20.00); expenses of defense counsel ($7,602.84); and fees for moving trial materials ($1,316.10).

## I.     Standards for Awarding Costs

A prevailing party may recover certain costs of suit under Fed. R. Civ. P. 54(d) (1), which provides in relevant part:  "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party."

A prevailing party is "one in whose favor a judgment is rendered, regardless of whether the party has recovered its entire claim or a portion thereof."  Garonzik v. Whitman Diner, 910 F. Supp. 167, 168 (D.N.J. 1995) (citing Fahey v. Carty, 102 F.R.D. 751 (D.N.J. 1983)). Stated otherwise, a prevailing party is one who "succeeds on 'any significant issue in litigation which achieved some of the benefit sought in bringing suit.'"  Reichhold, Inc. v. U.S. Metals Ref. Co., Civ. A. No. 03-453, 2009 WL 3761828, at *1 (D.N.J. Nov. 6, 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).

There is such a strong presumption that costs should be awarded to the prevailing party that, " '[o]nly if the losing party can introduce evidence, and the district court can articulate reasons within the bounds of its equitable power, should costs be reduced or denied to the prevailing party.' "  Reger v. Nemours Found., Inc., 599 F.3d 285, 288 (3d Cir. 2010) (quoting In re Paoli R.R.Yard PCB Litig., 221 F.3d 449, 468 (3d Cir. 2000)). The rationale behind this presumption is that the denial of costs is tantamount to a penalty.  Id. at 288-89 (citing ADM Corp. v. Speedmaster Packaging Corp., 525 F.2d 662, 665 (3d Cir. 1975)).

2

Despite the "venerable presumption that prevailing parties are entitled to costs," <u>Marx v. Gen. Revenue Corp.</u>, 133 S. Ct. 1166, 1172 (2013), courts do not have unfettered discretion to grant costs under Rule 54(d).  Absent express statutory authorization, the Clerk and district court may reimburse only those costs enumerated in 28 U.S.C. § 1920:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

<u>Crawford Fitting Co. v. J.T. Gibbons, Inc.</u>, 482 U.S. 437, 441 (1987).

The Supreme Court reinforced its <u>Crawford Fitting</u> holding in <u>Taniguchi v. Kan Pacific Saipan, Ltd.</u>, 132 S. Ct. 1997 (2012), wherein it limited the provision in §1920 (6) for the "compensation of interpreters" to the cost of oral translation.  In denying the cost of document translation, the Court stated that its decision was "in keeping with the narrow scope of taxable costs," which are "limited to relatively minor, incidental expenses." <u>Id.</u> at 2006.

Therefore, while a prevailing party is entitled to costs under Rule 54(d), those costs " 'almost always amount to less than the successful litigant's total expenses in connection with a lawsuit.'  10 Wright & Miller §2666, at 203." <u>Id.</u>  Furthermore, despite the presumption of granting costs to a prevailing party, that party must provide sufficient information to carry its burden of showing that the costs sought fall within the limits of § 1920.  <u>Romero v. CSX Transp., Inc.</u>, 270 F.R.D. 199, 201-202 (D.N.J. 2010).

In addition to Rule 54(d) and 28 U.S.C. § 1920, the Clerk's decision is guided by Local Civil Rule 54.1, which "establishes the general procedures to be followed in those cases where a party is entitled to recover costs" under § 1920. Lite, N.J. Federal Practice Rules, Comment 2 to Rule 54.1 (Gann 2013 ed.) at 234.

Defendant is unquestionably the prevailing party as final judgment was entered in its favor. Additionally, Electrolux has followed the procedural requirements of L. Civ. R. 54.1 and 28 U.S.C. § 1924 by timely filing and serving a Bill of Costs [Dkt. Entry 184-1], verified through the Affidavit of David R. Kott, Esq. [Dkt. Entry 184-17], as well as supporting invoices.

## II.     Distinction between Fed. R. Civ. P. 54(d) (1) and Other Fee-Shifting Statutes

At the outset, the Clerk must draw the distinction between the costs permitted under Fed. R. Civ. P. 54(d) (1) versus other fee-shifting provisions. As noted above, when costs are sought pursuant to Rule 54(d) (1), as here, the Clerk can grant only those costs set forth in 28 U.S.C. § 1920, pursuant to the Supreme Court's holding in the Crawford Fitting case.

NJM correctly points out that Electrolux supports its motion by relying almost entirely upon cases in which fee-shifting provisions other than Rule 54(d) (1) were applied. Defendant cites class action cases in which Fed. R. Civ. P. 23(h) and common fund principles were applied: Dewey v. Volkswagen of Am., 728 F. Supp. 2d 546 (D.N.J. 2010), rev'd on other grounds, 681 F.3d 170 (3d Cir. 2012); Weber v. GEICO, 262 F.R.D. 431 (D.N.J. 2009); Yong Soon Oh v. AT & T Corp., 225 F.R.D. 142 (D.N.J. 2004); In re Cendant Corp., Deriv. Action Litig., 232 F. Supp. 2d 327 (D.N.J. 2002). Other cases cited by Defendant applied fee-shifting provisions found in the Resource Conservation and Recovery Act, 42 U.S.C. § 6972(e) (Interfaith Cmty.Org. v. Honeywell Int'l, Inc., 336 F. Supp. 2d 370 (D.N.J. 2004), vacated

in part on other grounds, 426 F.3d 694 (3d Cir. 2005)) and the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(3)(B) (P.G. v. Brick Twp. Bd. of Educ., 124 F. Supp. 2d 251 (D.N.J. 2000)). Indeed, in the P.G. case, the court expressly distinguished between costs allowed under the IDEA and those permitted by § 1920. Id. at 266-67.

The Third Circuit has cogently explained the distinction between Rule 54 (d) taxable costs and non-taxable costs, arising under other provisions, as follows:

> English courts have traditionally made awards to the prevailing party for two types of litigation expenses. The first, "costs between party and party," are litigation expenses incurred by order of the court to facilitate consideration of the case. The second, "costs as between solicitor and client," are expenses incurred merely to aid one party in the presentation of his side of the controversy. The latter include attorney's fees and "other expenses entailed by the litigation not included in the ordinary taxable costs recognized by statute." Sprague v. Ticonic National Bank, 307 U.S. 161, 164, 59 S.Ct. 777, 779, 83 L.Ed. 1184 (1939).

Friedman v. Ganassi, 853 F.2d 207, 210 (3d Cir. 1988).

### A. *Defense Counsel's Expenses & Moving Fees*

The fee-shifting provisions at issue in Defendant's supporting case law, discussed above, allow non-taxable costs not contained within § 1920 or "costs as between solicitor and client," like charges for counsel's meals and travel, long-distance telephone calls, postage, legal research and the like. As a result, Electrolux's request for costs is over-inclusive. Some of the costs that it seeks fall outside of the ambit of § 1920 and are more appropriately categorized as attorney's fees. On this basis, the Clerk must deny all of defense counsel's expenses sought by Electrolux, totaling $7,602.84: lodging ($5,812.51); mileage ($1,213.89); parking ($159.75); and meals ($416.69) [Dkt. Entry 184-1, ¶¶ 7, 9, 10, 11].

For the same reason, Electrolux's fees for moving trial materials ($1,316.10) [Dkt. Entry 184-1, ¶ 8] are also denied.

### B. Expert Witness Fees

The other type of cost which Electrolux wishes to recoup that must be addressed at this juncture is expert fees. Defendant requests reimbursement of charges by its experts, Affiliated Engineering ($54,644.00) and ESI ($1,539.37), and by Plaintiff's experts, Wright Group Inc. ($6,015.28) and Patrick McGinley ($453.75) [Dkt. Entry 184-1, ¶¶ 13-16].

In the remaining case cited by Defendant, Fahey v. Carty, 102 F.R.D. 751 (D.N.J. 1983), this Court actually applied Rule 54(d) and allowed the taxation of expert fees. However, that holding is no longer good law in the wake of the subsequent Crawford Fitting holding, four years later. The Supreme Court there affirmed the Fifth Circuit's reversal of the district court's award of $86,480.70 in expert witness fees, holding that "absent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in 28 U.S.C. § 1821 and § 1920." 482 U.S. at 439. Section 1821, to be discussed in greater depth below, provides for just the payment of a $40 per day statutory witness fee, and travel and subsistence fees incurred through a witness' attendance in federal court proceedings and depositions. It does not include an expert's charges for professional services.

The Supreme Court recently reiterated that experts' fees are non-taxable, stating, "[t]axable costs are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators. It comes as little surprise, therefore, that 'costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit.' 10 Wright & Miller §2666, at 203." Taniguchi, 132 S. Ct. at 2006.

Affiliated Engineer's invoices identify the organization as "Engineering Consultants." Those submitted by Electrolux and amounting to $54,644.00 consist entirely of the

"professional services" of Defendant's experts, James Crabtree, P.E. and Frank Schwalje, P.E., charged at rates varying between $250 and $310 per hour, and their expenses, such as vehicle mileage, tolls, parking and meals, in addition to minimal "professional services rendered by clerical administration," charged at $60 per hour. [Dkt. Entry 184-13].[1]

As for the charges for professional services, which make up the bulk of this expense, NJM is correct when it argues that they are expert fees of the type that should be sought in an attorney's fees application and are not recoverable under §§ 1920 and 1821. This entire amount is denied except for James Crabtree's minimal expenses of vehicle mileage and tolls arising out of his deposition on July 6, 2011, to be addressed later in section V. on witness fees.

The charges of Electrolux's other expert, Thomas Bajzek are set forth in the ESI invoices [Dkt. Entry 184-16]. With the exception of one $14.37 charge for Federal Express, all charges are for reviewing file materials, preparing for and attending his deposition and preparing his report. These services were all billed at $250 per hour. NJM repeats its same objection. The Clerk agrees with NJM. All of these ESI expert fees are denied.

Similarly, the invoices of Wright Group Inc. [Dkt. Entry 184-14] contain the charges of Plaintiff's expert, Ronald Parsons for traveling to and from his depositions of June 6 and 30, 2011 and for testifying at the depositions at the rate of $475 per hour. For the reasons stated above, these $475/hr. "service" fees are denied. The Clerk will discuss the remaining travel and subsistence charges arising out of these depositions in section V. on witness fees.

---

[1] The only other fees shown on these invoices which might be recoverable under § 1920 are the 6/28/11 charge of $483.00 for "Black and White and Color Reproduction Copies of file contents as requested by opposing counsel," and the $63.00 charge for "document reproduction" during the period of 11/17/12 through 2/26/13. Id. Without more, the Clerk cannot discern whether these copies were necessary and taxable under § 1920 (4), and therefore, their costs must be denied for failure of Defendant to meet its burden.

The final expert fee requested by Electrolux, that of Plaintiff's expert, Patrick McGinley consists entirely of his $453.75 service charge for testifying at a deposition for 2.75 hours at the rate of $165.00 per hour. Again, based upon the above principles, this cost is denied in its entirety.

The Clerk turns now to the remaining requested costs, in the order in which they fall within the categories of taxable costs in § 1920.

### III.    Fees of the Clerk and Marshal, § 1920 (1)

Electrolux asks for the $59.95 cost of serving a deposition subpoena on PSE&G [Dkt. Entry 184-1, ¶ 2].

Section 1920(1) explicitly authorizes taxation of the costs of just the "clerk and marshal." However, this Court has held that the fees of private process servers are taxable under the combined reading of § 1920 and § 1921, which allows the court to tax as costs the fees for serving a subpoena on a witness. Ricoh Corp. v. Pitney Bowes Inc., Civ. A. No. 02-5639, 2007 WL 1852553, at *3 (D.N.J. June 26, 2007); Hurley v. Atlantic City Police Dep't, Civ. A. Nos. 93-260, 94-1122, 1996 WL 549298, at *8 (D.N.J. Sept. 17, 1996).

Defendant has submitted the invoice substantiating this cost [Dkt. Entry 184-3], which NJM does not oppose. The Clerk taxes this **$59.95** cost, allowed under § 1920 (1).

### IV.    Fees for Transcripts, § 1920 (2)

#### A.  Hearing and Trial Transcripts

Defendant requests taxation of the $3,777.70 combined cost of the transcripts of the February 13 and April 18, 2013 hearings and the trial transcripts [Dkt. Entry 184-1, ¶ 6].

Fees for recorded transcripts are taxable under § 1920 (2) if the transcripts were necessarily obtained for use in the case. Local Civil Rule 54.1(g) (6) further specifies:

> The cost of a reporter's transcript is allowable only (A) when specifically requested by the Judge, master, or examiner, or (B) when it is of a statement by the Judge to be reduced to a formal order, or (C) if required for the record on appeal. . . Copies of transcripts for an attorney's own use are not taxable in the absence of a prior order of the Court. All other transcripts of hearings, pretrials and trials will be considered by the Clerk to be for the convenience of the attorney and not taxable as costs.

NJM asserts that these costs must be denied because Defendant fails to satisfy the above requirements of L. Civ. R. 54.1(g) (6).

The hearing of February 13, 2013 [Dkt. Entry 117] addressed numerous *in limine* motions of both Plaintiff and Defendant and the Court also required follow-up submissions by the parties [Dkt. Entries 109, 111]. Under our seven-day rule, L. Civ. R. 7.1, defense counsel prepared and submitted a 5-page order reflecting Judge Thompson's many oral rulings [Dkt. Entry 108] and the Court used that order, although it was subsequently amended [Dkt. Entries 113, 118, 119]. The Clerk finds that this transcript was necessarily obtained by Defendant for use in the case and taxes its **$208.05** cost.

The topic of the April 18, 2013 hearing was Plaintiff's application to amend the Final Pretrial Order to include Brian Ripley, an Electrolux design engineer as a witness [Dkt. Entry 160]. This was not a complex proceeding which required more than minimal note-taking by counsel and in fact, Judge Thompson made no rulings, but deferred the parties to a conference call later that day. Defendant has not satisfied its burden of showing that this transcript was a necessity rather than a convenience of defense counsel. This $106.70 cost is denied.

Finally, Electrolux seeks the total cost of $3,462.95 for the trial transcripts. The docket reflects that Defendant's opposition [Dkt. Entry 178] to NJM's motion for a new trial

[Dkt. Entry 162] is replete with citations to the transcripts of multiple days of trial testimony by witnesses Ronald Parsons, Carl King, Jane Rich, Patrick McGinley, James Crabtree, Kecia Ellis and Samuel Pangaldi, as well as references to the transcripts of the charge conference and jury instruction.  The Clerk finds that these transcripts were absolutely necessary for Defendant's use in the case and grants all costs except the $10.00 shipping charge, which is not recoverable in this district.  Boyadjian v. Cigna Cos., 994 F. Supp. 278, 281 (D.N.J. 1998) (denying costs of postage because they are not listed in § 1920); Bollitier v. Int'l Bhd. of Teamsters, 735 F. Supp. 623, 629 (D.N.J. 1989) (denying taxation of costs of mailing); Hurley, 1996 WL 549298, at *4 (postage, delivery and messenger services fall under attorney's fees, not § 1920).  Therefore, the Clerk taxes trial transcripts in the amount of **$3,452.95**.

### B.  Deposition Transcripts

Also falling within § 1920 (2) are the requested costs of the deposition transcripts of Kecia Ellis ($357.50), Louis Spielberger ($659.60), Patrick McGinley ($628.00), James Crabtree ($427.96, $125.63), Carl King ($387.06, $83.76, $69.00), Helen Haney ($92.08) and Ronald Parsons ($242.20, $253.46, $135.60), which total $3,461.85 [Dkt. Entry 184-1, ¶ 3].  To clarify, the Clerk notes that ten of these 12 depositions were taken simultaneously in connection with one or two other Electrolux cases, i.e., Civ. A. No. 10-1952 in D.N.J. and Civ. A. No. 2:10-CV-02045 in E.D. Pa.  Therefore, with the exception of the depositions of Kecia Ellis and Louis Spielberger, whose testimony was specific to this case, the costs sought by Defendant constitute either one-half or one-third of the total charge incurred in the taking and transcribing of these depositions.  The Clerk commends Electrolux for splitting the costs of these depositions over the three cases, in recognition of the fact that it cannot recoup duplicate cost awards. Ortho-McNeil Pharm., Inc. v. Mylan Labs., 569 F.3d 1353, 1357 (Fed. Cir. 2009).

NJM does not object to the costs of the Ellis and two Crabtree depositions. Plaintiff contests the charges of the three King depositions on the ground that Carl King was the corporate designee of Electrolux and as such, is not entitled to witness fees under our local rule. As for the balance of the transcripts, NJM asserts that Electrolux did not use them at the trial for impeachment or cross-examination or in connection with dispositive motions.

Like hearing transcripts, deposition transcripts are taxable under § 1920 (2) if they were "necessarily obtained for use in the case." L. Civ. R. 54.1(g) (7) further provides, "[i]n taxing costs, the Clerk shall allow all or part of the fees and charges incurred in the taking and transcribing of depositions used at the trial under Fed. R. Civ. P. 32."

Despite the requirement of our local rule that the transcripts be "used at the trial," this Court has held that it has broad discretion to tax deposition costs under § 1920. Hurley, 1996 WL 549298, at *5. The Hurley court stated that the failure of the prevailing party to introduce depositions into evidence at trial did not preclude a finding that they were "used" at trial. It explained, "[a]n attorney needs deposition transcripts to prepare for both direct and cross-examination even if the transcripts are not directly introduced into evidence during the trial." Id.

This Court has gone even further, stating more expansively that "[f]or the costs to be taxable, the depositions need not have been used at trial, and must only 'appear reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'" Thabault v. Chait, Civ. A. No. 85-2441, 2009 WL 69332, at *7 (D.N.J. Jan. 7, 2009) (quoting Datascope Corp. v. SMEC, Inc., No. 81-3948, 1988 WL 98523, at *3 (D.N.J. Sept. 15, 1988)). See also, Smith v. Crown Equip. Corp., No. Civ. A. 97-541, 2000 WL 62314, at *3 (E.D. Pa. Jan. 13, 2000).

All of these deponents were listed on the Final Pretrial Order [Dkt. Entry 61] as potential trial witnesses for their expertise (McGinley, Parsons, Crabtree) or knowledge of facts, procedures or product design and manufacture  (Ellis, Spielberger, Haney, King). Additionally, the Parsons deposition transcripts were cited in support of and attached to Electrolux's *in limine* motions [Dkt. Entries 79, 81, 83].  Accordingly, the Clerk determines that all of these depositions would have appeared reasonably necessary at the times they were taken and were not merely for investigatory purposes.  They will be taxed subject to the deductions noted below for extraneous, non-taxable costs.

In objecting to the taxation of the King transcripts, NJM cites L. Civ. R. 54.1(g) (3), which provides that "[w]itness fees shall not be allowed to parties to an action."  Plaintiff argues against taxation of the transcripts because Mr. King was a corporate designee of Electrolux, and therefore, a party.  Even if this were the case, NJM is here confounding witness fees, addressed in subsections (g) (1) and (3) of L. Civ. R. 54.1, and deposition transcript fees, dealt with in subsection (g) (7).  There is no prohibition in our local costs rule against taxing the transcript fees of a corporate designee.

Fees recoverable under § 1920 (2) include the cost of the reporter in addition to the cost of the preparation of the transcript.  L. Civ. R. 54.1(g) (7).  Therefore, all costs of the reporter's attendance will be taxed along with all transcript fees.

However, the Clerk allows only the costs of a reasonable fee for transcripts and appearances, to the exclusion of fees for shipping, postage and handling, "UPS delivery," as well as the litigation support services of word index, "Expert/Tech," condensed transcript, "Depo Disk/Litigation Package," rough disk, "CD," and exhibits, shown in Defendant's invoices.

The Clerk addressed the non-taxability of shipping costs in section IV. A. above.

Absent a showing of necessity, litigation support costs are considered outside the limits of § 1920 (2). See e.g., Lewis v. D.R. Horton, Inc., 375 F. App'x 818, 828-30 (10th Cir. 2010) (affirming district court's cost award in which it deducted deposition costs of condensed transcript and computerized transcripts); Kidd v. Mando Am. Corp., 870 F. Supp. 2d 1297, 1299 (M.D. Ala. 2012) (deposition costs of condensed transcript, rough ASCII transcripts and depo drive not shown to be necessary were not taxable); United States ex rel. Davis v. U.S. Training Center, Inc., 829 F. Supp. 2d 329, 339 (E.D. Va. 2011) (denying costs of transcript drafts and realtime transcript services); Burton v. R.J. Reynolds Tobacco Co., 395 F.Supp.2d 1065, 1080 (D. Kan. 2005) (disallowing charges for keyword indices, ASCII disks, minuscripts, exhibits, postage and delivery); Suchite v. Kleppin, No. 10-21166-CIV, 2012 WL 1933555, at *5 (S.D. Fla. Mar. 23, 2012) (added cost of condensed transcript is not taxable); Vistein v. Am. Registry of Radiologic Technologists, No. 1:05 CV 2441, 2010 WL 918081, at *6 (N.D. Ohio Mar. 10, 2010) (costs of convenience services in deposition invoices are not recoverable).

The costs of exhibits too are generally considered to be for the convenience of counsel, who usually has a copy of exhibits in hand, and thus, non-compensable. Scallet v. Rosenblum, 176 F.R.D. 522, 529 (W.D.Va. 1997). Moreover, Defendant has failed to provide sufficient information to carry its burden of showing that the exhibits falls within the ambit of § 1920. Romero, 270 F.R.D. at 202 (D.N.J. 2010) (denying copying and printing costs for lack of itemization by movant of how copied documents constituted taxable costs). Defendant has provided no description whatsoever of the deposition exhibits or their use.

Applying the above deductions, the Clerk taxes the following costs of the depositions, in the order in which they appear in Dkt. Entry 184-1, ¶ 3:

| Deponent | Taxed Amount |
|---|---|

**Kecia Ellis**
Transcript $ 256.50

**Louis Spielberger**
Transcript $ 485.10
Reporter Attendance $ 110.00

**Patrick McGinley**
Transcript (50%) $ 567.63
Reporter Attendance (50%) $ 55.00

**James Crabtree, 7/6/11**
Transcript (33%) $ 333.47

**James Crabtree, 11/13/12**
Transcript (50%) $ 97.63

**Carl King, 3/15/11**
Transcript (33%) $ 227.73

**Carl King, 3/16/11**
Transcript (33%) $ 67.10

**Carl King, 8/10/11**
Transcript (33%) $ 56.33

**Helen Haney**
Transcript (33%) $ 92.08

**Ronald Parsons, 6/7/11**
Transcript (33%) $ 230.53

**Ronald Parsons, 6/30/11**
Transcript (33%) $ 241.80

**Ronald Parsons, 8/19/11**
Transcript (33%) $ 123.93

**Total:** **$ 2,944.83**

Summing up § 1920 (2) costs, the hearing ($208.05), trial ($3,452.95) and deposition

($2,944.83) transcripts are taxed in the total amount of **$6,605.83**.

14

## V.     Witness Fees, § 1920 (3)

Defendant seeks the $40 statutory witness fee for Bert Dale Robbins, Andrew Lee, Kecia Ellis, Louis Spielberger, and Samuel Pangaldi, in addition to nominal costs of mileage. Also requested are fees for trial witness, Carl King in the amount of $1,379.52.  The Clerk addresses herein too the witness fees buried within the invoices of experts who testified at depositions or trial, mentioned in section II. B. above, whose fees were otherwise denied.

NJM does not oppose the fees of Kecia Ellis and Samuel Pangaldi, who testified at trial [Dkt. Entries 144, 150].  Citing L. Civ. R. 54.1(g) (1), NJM does, however, oppose the remaining statutory witness fees on the ground that the witnesses did not engage in "actual and proper attendance."  Defendant states that they were served with subpoenas but were not actually called to appear at trial.

Local Civil Rule R. 54.1(g) (1) reads:

> (1) The fees of witnesses for actual and proper attendance shall be allowed, whether such attendance was voluntary or procured by subpoena. The rates for witness fees, mileage and subsistence are fixed by statute (see 28 U.S.C. § 1821).  Witness fees and subsistence are taxable only for the reasonable period during which the witness was within the District.  Subsistence to the witness under 28 U.S.C. § 1821 is allowable if the distance from the courthouse to the residence of the witness is such that mileage fees would be greater than subsistence fees if the witness were to return to his or her residence from day to day.

L. Civ. R. 54.1(g) (7) also provides that "[f]ees for the witness at the taking of a deposition are taxable at the same rate as for attendance at trial. (See L. Civ. R. 54.1(g) (1).)"

Our applicable local rule incorporates 28 U.S.C. § 1821 by reference, and thus, allowable witness fees are controlled by § 1821.  That statute provides for the payment of witnesses' fees and allowances for their attendance in federal court.  28 U.S.C. § 1821(a) (1).

Subsection (b) therein allows a $40 per day attendance fee "for the time necessarily occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance." Subsection (c) provides for the actual expenses of the most economical common carrier that is reasonably available, traveling the shortest practical route, as well as "[a]ll normal travel expenses within and outside the judicial district," including parking fees and tolls. Subsection (d) allows for a subsistence fee for a required overnight stay, provided that the per diem rate does not exceed the allowance established by the Administrator of General Services ("GSA"), pursuant to 5 U.S.C. § 5702(a), in the area of attendance.

Although they did not actually testify at trial, the Final Pretrial Order [Dkt. Entry 61] and Defendant's list of trial witnesses [Dkt. Entry 136-1] include Bert Dale Robbins, Andrew Lee and Louis Spielberger as expected witnesses. The relevant inquiry is not actual testimony or physical presence but the readiness to testify. Hurtado v. United States, 410 U.S. 578, 586 (1973); Spanish Action Comm. of Chicago v. City of Chicago, 811 F.2d 1129, 1138 (7th Cir. 1987) ("Fees paid to a witness who was subpoenaed but did not actually attend the trial may be allowed as costs 'when it was reasonably expected that his attendance would be necessary and he had held himself in readiness to attend.' 6 Moore's Federal Practice ¶ 54.77[5.-1], at 54-437 (footnote omitted). . ."); Shum v. Intel Corp., 682 F. Supp. 2d 992, 1001-02 (N.D. Cal. 2009), aff'd, 629 F.3d 1360 (Fed. Cir. 2010) (witness fees were proper for subpoenaed witnesses who were not called at trial but whose testimony was reasonably expected to be necessary at trial); Hernandez v. Wilsonart Int'l, Inc., No. 2:09-cv-747-FtM-36SPC, 2011 WL 7092657, at *4 (M.D. Fla. Dec. 30, 2011), report and recommendation adopted, 2012 WL 220265 (M.D. Fla.

16

Jan. 25, 2012) (same as above, even though case was dismissed on summary judgment).

Moreover, Robbins, Lee and Spielberger testified at their depositions. (Final Pretrial

Order) [Dkt. Entry 61 at 36]. Accordingly, the Clerk grants the $40 statutory witness fee for

these three witnesses, as well as for Kecia Ellis and Samuel Pangaldi, or total of **$200.00**.

Electrolux also requests mileage fees of $8.00 (14.16 miles x $.565/mile) for all

witnesses except Samuel Pangaldi, for whom it seeks $5.00 (8.8 miles x $.565/mile). Defendant

provides no explanation whatsoever of these distances and therefore, these fees are denied.

Defendant also wishes to recoup witness fees in the amount of $1,379.52 in connection

with the trial attendance of Carl King, a resident of Iowa. [Dkt. Entry 184-1, ¶ 12]. Mr. King

testified as a Rule 30(b)(6) witness, or as the corporate designee of Electrolux [Dkt. Entry 145

at 4-5] and therefore, the Clerk agrees with Plaintiff that these represent witness fees of a party,

which must be denied under L. Civ. R. 54.1(g) (3).

Finally, § 1821 witness fees are embedded in the invoices of Affiliated Engineering and

Wright Group, Inc. The Affiliated Engineering invoices show a $27.00 charge for one-third of

the vehicle mileage cost (from Edison to Audubon, NJ) for James Crabtree's July 6, 2011

deposition and a $2.00 charge for one-third of the cost of tolls. [Dkt. Entry 184-13 at 7].

These costs, shared with the other two pending Electrolux cases, are reasonable, considering the

approximate roundtrip mileage of 130 miles or so, taxed at the then-applicable GSA rate of $.51

per mile. http://jnet.ao.dcn/financial-managment/travel/new-mileage-rates-effective-january-1-

2011. The Clerk grants this **$29.00** cost.

The Wright Group Inc. invoices include the travel expenses of Ronald Parsons for his

June 7 and 30, 2011 depositions. [Dkt. Entry 184-14]. Mr. Parsons traveled from Providence,

RI to Media, PA for his June 7th deposition and incurred expenses, totaling $998.83 of: airflight ($379.40), car rental ($350.21), hotel ($225.72), fuel ($21.50) and parking ($22.00). Id. at 16-20.  These actual fees are reimbursable under § 1821, except for the overcharge for the one-night's hotel stay, which must be taxed at the GSA rate, applicable in the Philadelphia area at the time, of $136.00 per night.   www.gsa.gov/perdiem.  The new total of $909.11 must be split three ways and thus, these fees are taxed at **$303.04**.

In connection with his June 30th deposition, Mr. Parsons incurred charges of one night's hotel stay in Newark, NJ and parking of $18.00.  [Dkt. Entry 184-14 at 11-14].  The actual hotel charge of $205.50 must be reduced to the applicable GSA rate for Newark of $116.00 per night. The new sum of $134.00, divided three ways, amounts to **$44.67** of additional taxable witness fees.

All told, witness fees are taxed, pursuant to § 1920 (3), in the amount of **$576.71** ($200 + $29.00 + $303.04 + $44.67).

### VI.　　Cost of Copies, § 1920 (4)

Electrolux's entire description of its $11,157.89 requested cost of copies is as follows: "Includes black & white, color photocopying, scanning, printing trial enlargements, PDF's, discs, labels and labor."  [Dkt. Entry 184-1, ¶ 5].

As NJM points out, our local court rule imposes a two-part condition for the taxation of copies:

> The fees for exemplification and copies of papers are taxable when (A) the documents are admitted into evidence or necessarily attached to a document required to be filed and served in support of a dispositive motion, and (B) they are in lieu of originals which are not introduced at the request of opposing counsel.  The cost of copies submitted in lieu of originals because of convenience to offering counsel or his or her

client is not taxable.  The cost of copies obtained for counsel's own use
is not taxable.

L. Civ. R. 54.1(g) (9).

However, this Court has previously allowed the taxation of the cost of copies without strict adherence to the dual requirements of L. Civ. R. 54.1(g) (9).  In <u>Hurley</u>, the court noted that departure from the local rule would be permissible, although only to the extent consistent with § 1920 (4). 1996 WL 549298, at *3 n.5.  <u>See</u> <u>also</u> <u>Thabault</u>, 2009 WL 69332, at *13-14; <u>Reichhold</u>, 2009 WL 3761828, at *4.  This is in keeping with the Third Circuit's statement that a local court rule must yield to a federal rule where the two conflict.  <u>In re Baby Food Antitrust Litigation</u>, 166 F.3d 112, 138 (3d Cir. 1999).

Accordingly, this Court requires only satisfaction of the test of § 1920 (4), i.e., that the copies have been "necessarily obtained for use in the case."  The Clerk must determine the reason for these materials and deny taxation if they were made merely for counsel's convenience.  <u>Thabault</u>, 2009 WL 69332, at * 13-14.  However, as this Court stated in <u>Thabault</u>, "[c]osts are taxable under this provision 'even if the documents are not offered into evidence at trial.'"  <u>Id.</u> at 14 (quoting <u>Hurley</u>, 1996 WL 549298, at *3).

Citing L. Civ. R. 54.1(g) (9), NJM opposes all copying costs except for those incurred for Defendant's exhibits entered into evidence at trial. Beside reiterating that the case law cited by Defendant is inapposite, NJM maintains that Electrolux has failed its burden of parsing out those copying costs which were necessary as opposed to being for the convenience of counsel.

Electrolux supports its application with a 66-page exhibit [Dkt. Entry 184-6] which consists of invoices for color and black and white copies of documents which are largely unidentified.  One recurring description is "email print."  The Clerk has no idea what this

represents. In certain instances where the documents are identified, they do not appear "necessarily obtained for use in the case." For example, the set of charges dated 4/9/13 includes the notation: "On Binders please put labels: Ellis - EHP: 'In Limine Motions' 'Filed by NJM'." Id. at 36. The Clerk can conceive of no purpose of copies of the opponent's moving briefs other than for defense counsel's use and therefore, it is clear that these invoices do include costs incurred for the convenience of counsel. Defendant has not disputed this. While this Court has loosened the standard in long, complex cases, such as Thabault, which involved a nine-week trial, 2009 WL 69332 at *13-14, it has generally imposed on the movant the burden of itemizing and explaining the use of the copies. Romero, 270 F.R.D. at 204; Garonzik, 910 F. Supp. at 172.

The Clerk also notes that Electrolux's supporting invoices include fees for labels and binders, which constitute attorney's overhead and as such, are not taxable. Yong Fang Lin v. Tsuru of Bernards, LLC, Civ. A. No. 10-2400, 2011 WL 2680577, at *5 (D.N.J. July 8, 2011) (disallowing cost of exhibit binders as general overhead cost); Laura P. v. Haverford School Dist., Civ. A. No. 07-5395, 2009 WL 1651286, at *9 n.10 (E.D. Pa. June 12, 2009) (same); Close-Up Int'l, Inc. v. Berov, Civ. A. No. 02-CV-2363, 2007 WL 4053682, at *11 (E.D.N.Y. Nov. 13, 2007) (denying costs of trial exhibit binders and tabs as being subsumed in attorney's fees) and cases cited therein.

Conversely, copies which are required to be filed with the Court or provided to opposing counsel are necessarily obtained for use in the case under § 1920 (4). Metropolitan Van and Storage, Inc. v. United States, 101 Fed. Cl. 173, 203 (Fed. Cl. 2011); Friedlander v. Nims, 583 F. Supp. 1087, 1088 (N.D. Ga. 1984); Universal City Studios, Inc. v. Nintendo Co., Ltd., No. 82 Ci. 4259, 1986 WL 11462, at *2 (S.D.N.Y. Oct. 6, 1986). In this judicial district,

one courtesy copy of all papers filed in support of or in opposition to a motion must be submitted to the Judge's chambers. L. Civ. R. 7.1 (g). Otherwise, documents are filed and served on the parties through the Court's CM/ECF System. A hard copy of motion papers need not be served on opposing counsel. Per the Clerk's count from the docket, these copies number 868. [Dkt. Entries 34, 35, 44, 45, 58, 73, 76, 78-83, 100-106, 109, 114, 138, 178]. Multiplied by the $.15 per page rate requested by Defendant for black and white copies, which is reasonable, Interfaith Cmty. Org., 426 F.3d at 717, the Clerk taxes these copies in the amount of **$130.20**.

NJM does not oppose taxing the cost of copies of trial exhibits. Also, the Final Pretrial Order required that defense counsel provide copies of exhibits to opposing counsel, the Court and the jury [Dkt. Entry 61 at 50] and copies of trial briefs and proposed jury instructions to opposing counsel and the Court. Id. at 59. Some of these taxable costs are evident from the notations on the submitted invoices [Dkt. Entry 184-6]:

| **Invoice Date** | **Amount** | **Description** |
| --- | --- | --- |
| 3/8/13 | $ 572.90 | "Electrolux Dryer" |
| 3/22/13 | $ 12.50 | "DVD copy," "Footage of Dryer" (two copies) [2] |
| 4/11/13 | $ 71.87 | "Requests to charge, voir dire, trial briefs" (two copies) |
| 4/16/13 | $ 251.64 | 15 copies of oversized maps |
| 4/17/13 | $ 975.50 | 14 color enlargements, "Exhibits 8 + 22" |
| 4/18/13 | $ 5.00 | 2 CD's of "Ellis – Visual," "Evidence Gas" |
| **Total:** | **$1,889.41** | |

[2] Where three copies are charged, the Clerk taxes 66%, or two of the three copies, one each for opposing counsel and the Court, but not defense counsel's convenience copy.

The cost of copies is taxed, pursuant to § 1920 (4), in the total amount of **$2,019.61** ($130.20 + $1,889.41).

**VII.  Docket Fees, § 1920 (5)**

The final cost requested by Electrolux is the docket fee provided in 28 U.S.C. § 1923 and allowed pursuant to § 1920 (5).  Section 1923 sets a $20 docket fee on final hearings in civil actions such as this.  Defendant is entitled to recover this fee, which NJM does not oppose and therefore, the Clerk taxes this **$20.00** cost.

**VIII.  Summary**

In sum, the Clerk taxes the following costs in favor of Defendant and against Plaintiff:

| | |
|---|---|
| Fees of the clerk, § 1920 (1): | $    59.95 |
| Fees for transcripts, § 1920 (2): | $ 6,605.83 |
| Witness Fees, § 1920 (3): | $    576.71 |
| Cost of copies, § 1920 (4): | $ 2,019.61 |
| Docket Fees, § 1920 (5): | $     20.00 |
| **TOTAL:** | **$ 9,282.10** |

For the reasons set forth above, the motion of Defendant Electrolux Home Products, Inc. to tax costs against Plaintiff New Jersey Manufacturers Insurance Group is hereby **GRANTED IN PART AND DENIED IN PART**.  An appropriate order follows.

WILLIAM T. WALSH, CLERK

By:  S/John T. O'Brien
          Deputy Clerk

Date:  October 21, 2013